**HENRY J. ROBB, Inc., v. DISTRICT OF COLUMBIA.**

No. 8951.

United States Court of Appeals
District of Columbia.

Argued Oct. 24, 1945.

Decided Nov. 13, 1945.

Mr. Joseph FitzGerald, Jr., of Washington, D. C., for petitioner.

Mr. Harry L. Walker, Assistant Corporation Counsel, District of Columbia, of Washington, D. C., with whom Mr. Vernon E. West, Corporation Counsel, District of Columbia, of Washington, D. C., was on the brief, for respondent. Mr. Richmond B. Keech, Corporation Counsel at the time the brief for the District was filed, of Washington, D. C., also appears thereon.

Before GRONER, Chief Justice, and CLARK and PRETTYMAN, Associate Justices.

GRONER, C. J.

This is a petition to review a decision of the District of Columbia Board of Tax Appeals, sustaining an income tax assessment against petitioner for the year 1942. Petitioner is a corporation engaged in the business of making loans on notes secured by deeds of trust on real estate, purchasing such notes, buying and selling real estate on commission and the ownership and management of real estate for its own account. In the case of the purchase of first mortgage notes, its practice was usually to sell the notes at a profit. In the case of second mortgage notes, it ordinarily held the notes to maturity, its profit consisting of interest on the notes and the difference between the price paid therefor and the amounts ultimately received upon payment or other liquidation.

Between 1932 and 1936 petitioner purchased at foreclosure five parcels of improved real estate as the result of default in payment of its mortgage notes thereon. It acquired one additional property as the result of an arrangement between the owner and itself by which the property was conveyed in satisfaction of the debt. (1) Two of the properties were sold in 1942 (the tax year in question), resulting in a profit to petitioner. Petitioner reported the profit as arising from the sale of capital assets (not taxable under the statute). The Board of Tax Appeals sustained the Assessor's ruling that the profits were ordinary income and therefore taxable. (2) Petitioner when organized acquired certain bonds and shares of stock, some of which were sold in 1942 at a loss. In its return petitioner claimed the loss as arising out of the conduct of its ordinary business and hence deductible. The Board of Tax Appeals held that it was a loss sustained in the sale of capital assets and disallowed the deduction.

The applicable Revenue Act, D.C.Code 1940, § 47—1506, is as follows:

"No gain or loss from the sale or exchange of a capital asset shall be recognized in the computation of net income under this statute. For the purposes of this chapter, 'capital assets' means property held by the taxpayer for more than two years * * * but does not include * * * property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business." Title 47, § 1506(a).

"Gains or losses from the sale or exchange of property other than a capital

asset shall be treated in the same manner as other income or deductible losses, * * *." Title 47, § 1506(b).

The Board held (1) that the real estate acquired prior to 1942, and sold at a profit in that year, was held by the taxpayer primarily for sale to customers in the ordinary course of its business; and (2) that the bonds and shares of stock acquired by petitioner at the time of its organization in 1930, and sold at a loss in the year 1942, though held by petitioner for more than two years, had no relation to petitioner's ordinary and usual activities, and hence did not constitute stock in trade or other property held by petitioner primarily for sale to customers in the ordinary course of its business.

■ We think the Board's findings of fact and conclusions were in each instance correct.[1] Petitioner, as we have pointed out, was in the business of lending money on real estate, managing and renting property, collecting rents, selling insurance and such other matters as generally pertained to the real estate business. The acquisition of real estate, through the foreclosure of mortgages and subsequent sale, was an ordinary and natural incident of a business in which petitioner acted in varying circumstances as principal, agent and broker. The property acquired through foreclosure took the place of the mortgage note, and the subsequent sale of the property was neither more nor less than the ultimate liquidation of the original transaction. Hence it was as much in the ordinary line of business as the collection of the principal at maturity would have been.

The fact that the foreclosed land displaced the secured note did not, in the circumstances, change the nature of the transaction. What we have said in this respect is in accord with the views recently expressed in A. L. Carter Co. v. Commissioner, 5 Cir., 143 F.2d 296. There, a corporation, engaged primarily in the lumber business, and in pursuance thereof in financing the building of houses and taking first lien notes for the indebtedness due, was required during the depression to take over by foreclosure or otherwise a large number of houses which it thereafter kept in repair and rented until satisfactory sale could be made. In determining whether the gains occurred in the ordinary course of business, the court held that the management and administration of the foreclosed property were essential ingredients of the business of financing and accordingly the taking over of the property and its ultimate sale were likewise ordinary incidents of the business in which the corporation was engaged. In this aspect, the claim, now made, that because the acquisition of the property was not originally contemplated, or, stated otherwise, was not anticipated when the loan was made, its subsequent purchase and sale were incidents wholly unconnected with the usual course of business, is obviously not sustainable, for the reason that it assumes facts which are wholly contradictory of the record.

Here, as we have seen, a part of petitioner's usual "trade or business" was, in point of fact, in lending money on real estate security. The return to it might be through the repayment of the money with interest or its collection through foreclosure. It was just such transactions as those we are concerned with here which occupied its time, attention and labor, all to the end of profit and gain in the usual course of its business.

■ Petitioner's second claim is that the Board erred in not holding that its loss from the sale in 1942 of one hundred shares of stock was loss from the sale of property held primarily for sale to customers in the corporation's ordinary activities.

The Board, however, held that the shares of stock were capital assets and that neither loss nor gain was allowable under the applicable District of Columbia statute (supra).

The evidence shows that the particular shares in question were acquired by the Corporation in exchange, in part, for its own capital stock issued at organization in 1930. The Board's findings of fact show that petitioner did not thereafter at any time acquire any additional bonds or stock, nor at any other time have any transaction in the shares of other corporations; that the stocks and bonds received by it in exchange for its own stock, or in lieu of a money payment, therefore, were not stock in trade or other property properly includable in petitioner's inventory at the close of the taxable year and were not held for sale to customers in the ordinary course of its business. That this is true seems too clear for discussion.

Accordingly, the Board's findings and conclusions are in all respects affirmed.

Affirmed.

[1] Cf. District of Columbia v. Pace, 320 U.S. 698–703, 64 S.Ct. 406, 88 L.Ed. 408.